I am pleased to court. My name is Stephanie Bond. Also with me as co-counsel, playing a very important but non-speaking role, is Thomas Wilson. And I would like to reserve three minutes, if possible, for rebuttal. If one subsection of the California statute requires a mens rea that is less than recklessness, then it is remotion from a crime of violence. Ms. Bond, let me ask you a question, which is a little bit off the topic, but nonetheless, I think you need to respond to. As I understand, your client was released from custody on October 14, 2016. You know, Judge, I think that could very well be, yes. Does that moot this case? No, Judge, I don't believe it does. And, well, Judge, because I think, first of all, this is an important issue for this court to decide that will assist the district courts and also... Well, we've got a lot of these kind of cases in front of us, and I'm not sure this one is any more important than the others we've got in front of us. So I'm trying to decide why this isn't mooted. Well, Judge, I don't believe it is mooted in the sense that... ...to get to this point doesn't mean that Mr. Rivera-Muniz doesn't have the right to have this issue heard as to whether or not it's a crime of violence. What's the supervised release term? Judge, I believe he got three years. Obviously, he was deported, and I guess that's my other issue. I hate to act like my clients will come back to the United States, even though... But clearly, we know that that happens. And if that happens in his future, whether or not he has a crime of violence or a 16-level enhancement in the future is always an issue. I mean, obviously, we need to make sure we got the sentencing correct and the sentencing category correct. Does this decision affect his supervised release in any way? I don't believe it will, Judge, because obviously the supervised release is set just as a... All federal laws have not come back to the United States, basically, is the only condition of a supervised release at this point, because he has been deported. So, I'm going to follow up Judge Smith's question. So, what relief are you asking for today? Well, Judge, I'm asking for the fact that the crime of violence be taken off of his record, that it is not a crime of violence. And can that be done with habeas? Judge, well, I don't know if it can be... That's usually the remedy for habeas. And as a consequence of that, I mean, our cause for that might be that we would order the crime taken off of his record. But if he's been released, do we have the right to clean up the record without releasing the prisoner? Well, Judge, I do think that this court has an obligation to clean up the record and make sure that the record is correct. Well, I guess what we're saying is, I'm not sure that's enough. What we're saying is, we're really airing habeas. And we've got to have a reason to do something, because habeas has let me out, get my body out of jail. It isn't anything but get my body out, bring the body to me. That's what it's all about. And so, at this point, bring the body to me. If he's out of custody, do I have anything? Well, Judge, again, I do think that this court has the obligation, because he's still under a court supervision. I mean, even though his only role is the fact that he's on a supervised release, so he can't violate any federal law, he's still under supervision of the court. And, obviously, that's something this court decides. And then the district court decides whether or not they're going to modify the supervised release anyway. If he comes back into the United States, obviously that's a big issue for the court to take into consideration, the fact that he might have done a longer sentence because the judge made a mistake. Well, a longer sentence is over. We're talking about a supervised release. Correct. And, obviously, like I said, I hate to act like people come back into the United States even after they've been deported. But, clearly, in this case we have that issue. And, for all I know, it will happen to him again in the future, and the district court needs to know what to do, and the district court needs to know if they were correct in what they did the first time around. So are you saying that the only import is on the opportunity or the chance that he comes back, he gets violated for supervised release, it's going to have some sort of impact on the district judge's consideration of a sentence for the violation of supervised release? Well, I don't believe that that's the only import, but I do believe that that is definitely a consideration as to why this court still needs to observe this issue. But even if we resolve the issue in favor of him with regard to the sentence, the sentence is over. And so you're saying that somehow he's banking time for the supervised release? Well, I don't know that he's banking time. Maybe the district court will look at it that way if there's an issue with supervised release. But I guess what we're asking is what import at this point would any decision by this court be on the off chance, we understand there's a possibility that he comes back into this country, reenters, is arrested, is violated for supervised release conditions. Well, Judge, obviously he's still under supervised release. He's still under this court, you know, the district court supervision. And so he still has a sentence even though he's not in custody. He's still under a court sentence. And if you were to violate his supervised release, what would be the penalties for that? Well, depending on how the violation was, what the violation was, it could be anywhere in his case between six and 18 months in custody. Okay, so there is additional time that he could spend in custody if he violated his supervised release. There is mandatory time. It just depends on if it's a grade A, B, or C violation. But no matter what, he's going to do time in custody if he violates his supervised release. And, yes, I mean, maybe the district court will take that consideration. If this court reverses and remands the sentencing, maybe the district court will decide to take him off of supervised release. I don't know what the district court will do, but he's still under a system, the criminal justice system because of supervised release. Well, that's the reason for the question is because usually I come with the idea that I'm going to get him out from the prison. And I think you've said if I do, it doesn't necessarily get him off of supervised release. It's only based on a conjecture of what might happen in the future. That's why I wanted your input. So if I take you back to what you came to argue about, I mean, this was something that worried me. But if I take you back, he did have a prior conviction for voluntary manslaughter under California Penal Code 198A, right? That is correct, Your Honor. And manslaughter is an enumerated offense, is it not? It is. With an enumerated offense, it's got to be reckless, right? It does. So I guess what I'm trying to figure out is why you got a case. Well, Judge, I think it stems on the fact that there's the imperfect self-defense that the California statute has. The key in this case is the fact that he was originally charged with murder, went to a jury trial, and was found guilty of the lesser included offense of voluntary manslaughter. Voluntary manslaughter under the California Code includes the imperfect or unreasonable self-defense. I think they kind of refer to it as both because it's basically the jury saying, if we think that he really believed he needed to do this. Oh, but our case, and I don't know how you say it exactly, but I'm going to give it the Idaho pepper. Kijada Aguiar suggests that 192A requires recklessness. Well, Judge, and if you look at the elements of the jury instructions, the statute in this case. We don't need to look at the jury instructions. I've got a case dead on. It says Kijada Aguiar, 192, requires recklessness. And then I've got another case, Gomez Leon, which says recklessness is an element of contemporary manslaughter. And so, therefore, I've got recklessness on the one side, which is California law. I've got recklessness, which is under contemporary manslaughter, which is the federal statute. And I'm done. Well, Judge, see, I would disagree because of the fact that we can't be. . . I've got a case law dead on. Well, I understand that, and I understand that it's the recklessness, but you have also the issue of whether or not the statute is broad, overbroad, and criminal. How can that be, Counsel? Because he was convicted of 192A, so we don't really have to look at much else. And it is word for word the federal statute. Well, Judge, the Supreme Court has said that you're not supposed to look at the words, and if there's no elements in the statute, this Court. . . I'm not supposed to look at the words? Well, you're not supposed to look at the title. I'm not looking at the title. I'm reading 192A and comparing it with 18 U.S.C. 1112A. But, Your Honor. . . There's no sense in voluntary manslaughter in both of them. It is identical word for word. Well, Your Honor, but since there is no elements of the offense in the actual statute, it just says what it is, that, you know, it's a heat of passion and so forth, the Court. . . the only way the Court can determine the elements is to look at the jury instructions in the case law. And that's what has been. . . that says that when it's not clear in the statute what the elements are. And that is the key because the statute itself may say one thing, but if you look at the jury instructions and you look at the case law, there's the imperfect self-defense, which is the lesser included offense of a murder charge. It's not just the fact that it's a heat of passion. Specifically, under California law, it's heat of passion or imperfect self-defense, and the jury is given both of those options. And clearly, I mean, when we look at this case, we know it could have been heat of passion. I mean, the pre-sentence report tells us the basic general facts of the case. We know it had to have been something else for them to find him guilty of a lesser included offense of murder because there was no heat of passion issue. This was a fight between three men, according to the pre-sentence report. So clearly, it had to be the imperfect self-defense, which is not included in the federal statute. I'm having a tough time. Vyrie Gomez-Leon. Gomez-Leon considers your argument dead on. It says there's four ways to determine whether this is a crime of violence, four ways to determine what we need to do. One of the ways looks to 16A and 16B. One of the ways looks at 2L12B, which is exactly what we have here. And it says that's a perfect way to do it. You don't have to look at 16A. You don't have to look at 16B. All you've got to do is go to 2L1.2B. And if it's there, an enumerated offense case is a case open. And then you're trying to say that simply because we have another case that says, well, you know, even though this might work, we ought to look and see whether all the definitions are right. So I would find, well, is the definition of one any different than the definition of another? That's why my colleague's question is dead on. They have the same language. They have the same point. Then I go to Quigada, again, as we are. It says to me under Ninth Circuit law, in other words, if you're going to win, you've got to go above me. 192A is reckless. And then Gomez-Leon says the federal law for contemporary manslaughter requires recklessness. So I got all the recklessness. I got the words the same. Am I not done? Well, Judge, I don't think you are done. And the reason why I don't think you are done is because this court in my 28-J letter, I had presented the fact that this court just recently decided Mendoza Medea, which was a manslaughter, a Florida manslaughter. And the panel that heard that case obviously didn't look at the fact that it's an enumerated offense because obviously the person was convicted of manslaughter under 2L. They took 16A or 16B, which is exactly what Gomez-Leon said they could do. But Gomez-Leon also says I can look at 2L. And it's the same. It's not wrong. And that's what they did here. Well, Judge, though Taylor says that if the statute is overbroad, then it's not a category. It's not overbroad under Gomez-Leon. Under Gomez-Leon, I've got one of four ways to look at this, and it's not overbroad if I look at any one of those ways. Well, Judge, I would respectfully disagree because of the imperfect self-defense. There is no imperfect self-defense that's allowed under the common law or under the federal statute. Counsel, my law clerks yesterday polled ALR, and ALR says that imperfect self-defense is a part of common law in various state statutes. Apparently it's a very, very common provision for voluntary manslaughter. Well, it's not in the federal statute. Well, I'm not sure that it has to be directly in the federal statute. Does that have to be a one-to-one mapping? I mean, again, the language is identical. What you said is, well, California allows this imperfect self-defense. Apparently it's a very, very common provision. California is not an outlier on this. Well, Your Honor, we're supposed to be looking at the generic contemporary definition. And one of the ways we've always— Do we know that the feds have rejected imperfect self-defense as a possibility? I don't know that they've— How do you know that it's not there? Well, by looking at the jury instructions. That's how I know it's not there. By looking at the federal model jury instructions? Correct. Okay. Are those consistent across circuits? No, I don't believe they are, Judge. I mean, I think some of them are very consistent, but, you know, I'm looking at what the Ninth Circuit and the District of Arizona has for jury instructions. And I think that's the issue before this Court. Because, obviously, you know, if one does have it, you know, in a jury instruction— I personally didn't see it in the model jury instructions in the federal. Definitely didn't see it in the District of Arizona or the Ninth Circuit ones. That's how I know that it's not included in there. Because I would agree with— Well, the problem that you have is that any time that we are trying to determine with jury instructions or with whatever it is we have in the state law, we're trying to determine what the state law suggests. If we're trying to determine what the federal law suggests, we're looking at what is our case law as to the federal law. That's why I gave you the case law as to the federal law. Gomez-Leon says this is it. It doesn't talk about your enumerated self-defense or any of that. It says this is the law. And so, therefore, at that point, you've got the federal law. You haven't got to look around. You've got it. It's put together with Gomez-Leon, and it should be applied. So then if I'm going to go look at the state law, it may not be right on. So what happens to that? Should it be right on? And then at that point, I've got to look how the state's interpreted that language. Is it right on or isn't it not right on? And that's the only time where you'd have those other, if you will, jury instructions are there. If you will, interpretation of the law. But as to the federal law, once you've got it, we haven't really got a lot to say unless you want to go above us. Well, but see, Judge, the problem is Gomez-Leon was out when this court decided Mendoza-Padilla. And so clearly, I mean, and that was just a recent decision. I'm not saying that they overturned Gomez-Leon because that wasn't in there. But clearly, they didn't follow and do the same things. Just a few months ago that they did in Gomez-Leon. But I'm saying that we automatically have to go to the modified categorical and start looking at all the underlying information. And what we're saying is it's enumerated. So why don't we go beyond that? What triggers it for us to go beyond the enumerated defense?  So once it matches, why do we need to go further than that, look at any underlying information such as the jury instruction? Well, because of the fact that, as this court has already decided, and let me get the case over for you, Ortega-Mendez v. Gonzalez, is if it's the elements of the statute are not in the statute, you have to look to the other jury instructions in case law. And in this case, the elements are not in the statute. It just says, parrots the language, basically, that the federal statute has for voluntary manslaughter. So then we look at the underlying case law. And California law, in terms of said, has an element of recklessness. Federal law mirrors that. So why won't we go any further? Well, Judge, and I don't concede that this is a recklessness standard. I think when you look at the elements under the jury instructions, it is not a recklessness standard. I believe it's less than a recklessness standard because of the fact that the person has an actual belief that what they are doing is correct and is necessary. And recklessness is an awareness and conscious disregard of the risk, is what this court has said. Well, that's not what the California statute has for imperfect self-defense because for the imperfect self-defense, it's that the defendant actually believed there was imminent danger. I mean, that makes some sense in theory. I mean, the problem with it is that California will let you use this to go from murder to voluntary manslaughter. You know, that's, you know, to say, okay, we otherwise would get you if we didn't offer this. Your client would have been convicted of murder. We wouldn't be having this conversation at all. Well, and I think that's true. And, you know, I mean, in Arizona, we obviously have self-defense or we have murder. We don't have an imperfect self-defense. And, yeah, you either were acting in self-defense and that was reasonable or you're convicted of murder. But, see, that's the difference, though, in the statute, is that California does have this imperfect self-defense where a person can say, I really thought my life was in danger and I really thought I needed to kill this person in order to do that. And a jury can say, yeah, but we think your belief was unreasonable. We don't like your belief. And that's why I don't think it's a recklessness standard under the statute  It may be even worse. Well, I actually think it's a lot less because of the fact that the person really honestly believes that they have to act in self-defense. And it's a jury that's saying, yeah, we think that either one of those beliefs was unreasonable, not wrong, but mistaken. What would an Arizona jury do in that case? Well, I would hope as a defense jury that Arizona jury would say self-defense. But none necessarily would. And so your client in Arizona might have been convicted of murder. And, again, we would not be having this conversation at all. He might have been. He thinks that California has adopted sort of a reasonable middle here. And I'm not sure it gets you out of your problem. But, anyway, we've taken you well over your time. I will allow you time for rebuttal. Thank you so much. Thank you. Ms. LaBeouf? Good morning, Your Honors. May it please the Court, I'm Laura LaBeouf, and I represent the United States Attorney's Office in the District of Arizona out of Tucson. The District Court correctly found that the defendant in this case had been convicted of a crime of violence and applied a 60-level enhancement to his sentence. This Court should affirm. As the Court has already pointed out, the defendant was convicted of voluntary manslaughter, which is an enumerated offense under the United States Sentencing Guidelines. That determines what approach will be taken in defining what a crime of violence is. We take the enumerated offense approach. In doing so, the next step is to determine whether the California statute is a categorical match to the federal generic definition. In this case, it is. A categorical match because it uses the same language in the statute or because it uses the same elements? Because it uses the same elements, Your Honor. Looking at Gomez-Leon, Gomez-Leon examined the California manslaughter statute construction and determined that the defendant in that case was not convicted of a crime of violence because of the particular subsection that he was convicted under in the manslaughter statute. This case is different because the defendant in this case Do you know whether there's any federal jurisdiction that recognizes the imperfect self-defense? I am not aware of one, Your Honor. However, even the imperfect self-defense in California still defines an intentional killing. And as Your Honor pointed out, it is something higher than recklessness. It's an intentional killing. It's an intentional act. It is not lower than recklessness. The person that asserts an imperfect self-defense intends to kill that person. It's not reckless conduct. Even if it were, it would still be a categorical match under the guidance in Gomez-Leon. I'd also point out to the Court, I filed a 28-J letter this past Wednesday citing to People v. Simon, which is a California Supreme Court case that was decided earlier this year. While it's not the whole thing, the dicta is instructive in that it addresses the issue of imperfect self-defense and how that comes into play with murder and with the manslaughter statute. People v. Simon specifically notes that imperfect self-defense simply reduces a murder to a voluntary manslaughter by the elimination of the element of malice, but it still remains an intentional killing. I would also point out that there has been some discussion of the Mendoza-Padilla decision, which this Court decided earlier this year. The defendant in Mendoza-Padilla, though, was convicted under a Florida manslaughter statute, and the problem with that statute was that it required a mens rea of less than recklessness, and that's why that conviction was not found to be a crime of violence in this Court. Again, that's very different than the situation that the Court has before them in this particular case, where the defendant was convicted of voluntary manslaughter under California law, which is the match. Does the government have a position on whether this Court continues to have jurisdiction in the case when the prisoner's been released? Your Honor, I also neglected to check on whether the defendant had actually been released. I noted that he had a targeted release date of October of this year. I think that there are some things that the Court should consider with regard to mootness in this particular case. This is a case that implicates the sentencing guidelines definition of crime of violence, and as of November 1st, those guidelines have changed. There will still be a use of crime of violence, I believe, in the misdemeanor arena, but as far as moving forward with the enumerated offense of manslaughter here, I'm not sure that this issue is going to come up again with any kind of frequency. Right, but he's still got some collateral consequences, right? I mean, if he comes back in, if we affirm the judgment here and he comes back in, this is on his record. But if we were to vacate this sentence and he were to come back in, there would be different consequences for him. So still he suffers some consequences, but we're here on habeas, and it's not clear that we've got somebody that we can order released from prison if we were to find him in favor of Mr. Rivera. I think that's true, Your Honor. You cannot order him released from prison. He already apparently has been released from prison. With regard to the collateral consequences of the supervised release term, even if this court were to overturn... or, sorry, to remand the case for resentencing, the defendant would very likely still face that three years term of supervised release, so in that sense, I'm not sure that it... Is there any way for him to violate the supervised release except by coming back into the United States at this point? No, because if he's been deported... No, we are not. We are supervising his drug use in Mexico. No, we are not. So if there are no other questions, I will go ahead and conclude, Your Honors. As I stated before, the district court correctly found that the defendant in this case had been convicted of voluntary manslaughter under California law. That's an enumerated offense. Under the guidelines, it's a categorical match to the federal generic definition, and based on that, this court should affirm. Okay. Thank you, Ms. Lovato. Ms. Todd, before you adjourn a minute. Your Honor, just a brief response to the argument regarding the intentional act. Whenever somebody is acting in self-defense, it's always going to be intentional, but the mens rea becomes the defendant's actions that criminalizes it. I mean, obviously, what is criminal is not the fact that he intended to kill somebody. What is criminal is the fact that he believed, unreasonably, that this was necessary, and that's where I believe the mens rea element of less than recklessness comes in. And so an observer on the street could say, well, that was reckless of you to have acted in this way, that you thought you could kill somebody intentionally, when you really couldn't. Well, but see, recklessness, though, requires that he be aware of some kind of a risk, or intentional requires that he intend to do this act. And I would go back to the Mendoza Padilla case for the court because of the fact that that was dealing with a manslaughter by act, and I believe that that statute is very similar to the statute that's in front of the court today because that statute said that one commits an act. Well, that's intentional. They committed the act. But Mendoza Padilla looked at the fact that the act is not lawfully justified or excusable, which is the exact same thing as the self-defense statute. They just call it something different. They called it manslaughter by act in Florida. California calls it an imperfect self-defense. It's the same thing, that you believed you committed this act, being that somebody died, that you killed somebody. The issue is, was it legally justified or was it not? And in Mendoza Padilla, this court said that is less than recklessness. That's the same statute we have here. We have that somebody killed somebody. But you're taking it because we have to look at the point of view of your client, but actually the jury didn't believe him, and they found at the very least recklessness, in fact, maybe even higher than recklessness. So you're arguing that it's less than recklessness, but there's nothing to support that in terms of what the jury was instructed on and found. They found him of the lesser included in all three men. Correct. Manslaughter. So he had to have, for the imperfect defense, he had to have a knowledge and an acknowledgment that what he was doing was going to kill somebody, and he was, for lack of a better word, reckless in the assumptions he was making and why he had to. Well, he was violent for it. He wasn't reckless. It was unreasonable. Well, is that less than reckless? I believe it is less than reckless, and I believe in Mendoza Padilla this court agreed that it's less than reckless because Mendoza Padilla is the same thing. One commits an act resulting in death. The act is not lawfully justified or excusable. And this court said that is less than recklessness. There's nothing different with the imperfect self-defense. One commits an act, you think that you have to commit this act, but the jury thinks that something wasn't reasonable, that it wasn't justifiable, and that's what makes it criminal versus a self-defense. And that's exactly what the manslaughter by act was in Mendoza Padilla, is that you committed the act, we all agree you committed the act, it's just that it wasn't legally justified. Except the difference between Florida and California is California has in the statute it matches the federal where it did it in Florida. Well, again, I believe you have to look to the jury instructions because the elements are not in the statute. Right, so you want us to go to the modified categorical when we have an enumerated offense, and that's the bridge that I'm having difficulty with, is like why should we go to the modified categorical? Otherwise, every time we'll go to the modified categorical. Well, Judge, I do think that the court, and sentencing, and that's what I had argued, was that this does need to be a modified categorical approach, and the reason why is because this was a murder case, this is not somebody who was charged with voluntary manslaughter or somebody who, you know, plead guilty to voluntary manslaughter. This is someone who was charged with murder, went to trial, and the jury was instructed a certain way, and the jury found it to be voluntary manslaughter, which makes it different. So you say every time the jury finds a defendant, guilty of the lesser included, even though it's an enumerated offense, we have to go directly to the modified categorical. Well, I don't know that we have to make it that blanket of a rule, but in this case, I definitely think that it has to go to the modified categorical approach because of the fact that we know it couldn't have been what was on the face of the statute because it wasn't a heat of passion. So there's no way, I mean, just looking at the statute, you know that that couldn't have been the issue. There's nothing in the facts that suggests it's in the pre-sentence report that this could ever have been a heat of passion, and that's the only thing under the California statute when you just look at the face of the statute without the elements that makes it a voluntary manslaughter is the heat of passion issue. We know that's not the case, so it had to have been something else. So that's the reason why in this case, I think it has to go to a modified categorical approach because categorically it is not a crime of violence because it's a lesser-included offense of murder. And we have to look past the actual title, according to the Supreme Court of the statute, to be voluntary manslaughter. And when we look past it, we see that the only thing that's possible is the imperfect self-defense. I think we understand your position. We thank both counsel for the argument. The case of the United States v. Rivera-Muñiz is submitted.
judges: Bybee, N.R. Smith, Kobayashi